[Civ. No. 19636. First Dist., Div. Two. June 21, 1961.]

KEITH M. RICHARDS et al., Appellants, v. ELISHA BEAUREGARD FLOWER, Defendant and Respondent; GEORGE L. SUTTON et al., Interveners and Respondents.

George King for Appellants.

William H. Coburn, Jr., for Defendant and Respondent.

Dinkelspiel & Dinkelspiel and Norman Coliver for Interveners and Respondents.

SHOEMAKER, J.—Plaintiffs Keith and Harriet Richards, husband and wife, appeal from a judgment denying them specific performance of an alleged agreement for the sale of certain real property.

The facts are without dispute. Plaintiff Harriet Richards, on January 15, 1959, wrote the defendant Flowers (sued herein as Elisha Beauregard Flower), as follows:

"We would be interested in buying your lot on Gravatt Drive in Oakland, California, if we can deal with you directly and not through a realtor.

"If you are interested, please advise us by return mail the cash price you would expect to receive."

On January 19, 1959, Flowers replied:

"Thank you for your inquiry regarding my lot on Gravatt Drive.

"As long as your offer would be in cash I see no reason

why we could not deal directly on this matter. When I bought the lot several years ago there was a title search and that is clear. Also a contour survey of the property was made at that time.

"Considering what I paid for the lot, and the taxes which I have paid I expect to receive $4,500.00 for this property. Please let me know what you decide."

On January 25, 1959, Mrs. Richards sent the following telegram to Flowers: "Have agreed to buy your lot on your terms will handle transactions through local title company who will contact you would greatly appreciate your sending us a copy of the contour map you referred to in your letter as we are desirous of building at once. . . ."

On February 5, 1959, after these exchanges, defendant entered into an agreement to sell the property to the interveners Sutton through the real estate brokerage firm of Mason-McDuffie Company. Plaintiffs were thereafter advised of the Sutton transaction, but claiming they had a valid contract of sale, called upon defendant to deposit his deed. He refused, denying any contract for the sale of the property with them, and the Richards shortly thereafter commenced this action. The Suttons intervened, asking specific performance of their contract, and after court trial judgment was entered in favor of defendant Flowers with respect to plaintiffs' claim, and for interveners on their demand for specific performance. In arriving at its conclusion, the trial court interpreted the documents above quoted without the aid of any extrinsic evidence and found that defendant had made plaintiffs an offer capable of acceptance, but that plaintiffs' telegram of acceptance did not comply with the California statute of frauds, since plaintiffs had not given the telegraph company written authorization to send the message. The court also found that there was a valid contract between defendant and interveners and that the interveners had not been damaged by defendant's inability to convey marketable title. Plaintiffs appeal from the judgment thereafter entered in accordance with said findings.

 Under the factual situation in the instant case, the interpretation of the series of communications between the parties is a matter of law and an appellate court is not bound by the trial court's determination. (*Estate of Platt* (1942), 21 Cal.2d 343, 352 [131 P.2d 825]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), 46 Cal.2d 423, 429-430 [296 P.2d 81, 57 A.L.R.2d 914].) Respondent Flowers argues

that the letter of January 19th merely invited an offer from appellants for the purchase of the property and that under no reasonable interpretation can his letter be construed as an offer. We agree with the respondent. Careful consideration of the letter does not convince us that the language therein used can reasonably be interpreted as a definite offer to sell the property to appellants. As pointed out in Restatement of the Law, Contracts, section 25, comment a.: "It is often difficult to draw an exact line between offers and negotiations preliminary thereto. It is common for one who wishes to make a bargain to try to induce the other party to the intended transaction to make the definite offer, he himself suggesting with more or less definiteness the nature of the contract he is willing to enter into. . . ."

Under this approach, our letter seems rather clearly to fall within the category of mere preliminary negotiations. Particularly is this true in view of the fact that the letter was written directly in response to appellants' letter inquiring if they could deal directly with respondent and requesting him to suggest a sum at which he might be willing to sell. From the record, we do not accept the argument that respondent Flowers made a binding offer to sell the property merely because he chose to answer certain inquiries by the appellants. Further, the letter appears to us inconsistent with any intent on his part to make an offer to sell. In response to appellants' question, respondent stated that he would be willing to deal directly with them rather than through a realtor as long as their "offer would be in cash." We take this language to indicate that respondent anticipated a future offer from appellants but was making no offer himself.

Appellants refer to the phrase that he would "expect to receive" $4,500 and contend this constitutes an offer to sell to them at this price. However, respondent was only expressing an indication of the lowest price which he was presently willing to consider. Particularly is this true inasmuch as respondent wrote only in response to an inquiry in which this wording was used. We conclude that respondent by his communication confined himself to answering the inquiries raised by appellants, but did not extend himself further and did not make an express offer to sell the property. We have before us a case involving a mere quotation of price and not an offer to sell at that price. The cause, therefore, comes within the rule announced in such authorities as *Nebraska Seed Co.* v. *Harsh* (1915), 98 Neb. 89 [152 N.W. 310, L.R.A. 1915F 824],

wherein the seller had written the buyer, enclosing a sample of millet seed and saying, "I want $2.25 per cwt. for this seed f.o.b. Lowell." The buyer telegraphed his acceptance. The court, in reversing a judgment for plaintiff buyer, stated: "In our opinion the letter of defendant cannot be fairly construed into an offer to sell to the plaintiff. After describing the seed, the writer says, 'I want $2.25 per cwt. for this seed f.o.b. Lowell.' He does not say, 'I offer to sell to you.' The language used is general, . . . and is not an offer by which he may be bound, if accepted, by any or all of the persons addressed" (p. 311 [152 N.W.]); and *Owen* v. *Tunison* (1932), 131 Me. 42 [158 A. 926], wherein the buyer had written the seller inquiring whether he would be willing to sell certain store property for $6,000. The seller replied: " 'Because of improvements which have been added and an expenditure of several thousand dollars it would not be possible for me to sell it unless I was to receive $16,000.00 cash. . . .' " (p. 927 [158 A.]).

The court, in holding that the seller's reply did not constitute an offer, stated: "Defendant's letter . . . may have been written with the intent to open negotiations that might lead to a sale. It was not a proposal to sell."

It would thus seem clear that respondent's quotation of the price which he would "expect to receive" cannot be viewed as an offer capable of acceptance.

Appellants rely on the California case of *Gibson* v. *De La Salle Institute* (1944), 66 Cal.App.2d 609 [152 P.2d 774], as authority for their position. In the Gibson case, the defendant seller, as a culmination to prior negotiations between the parties, sent a telegram stating, "Find it necessary to ask for following prices . . . Please wire today if interested and samples and sales contract will go forward" (p. 611 [66 Cal.App.2d]). Defendant seller contended on appeal that this telegram was not an offer capable of acceptance but merely constituted a quotation of prices. The appellate court held that the offer was clearly distinguishable from a mere quotation of prices "particularly since the message before us contains the additional words, 'Please wire today if interested and samples and *sales contract* will go forward.' (Italics ours.)" (p. 624 [66 Cal.App.2d]). The court then went on to state that the case was comparable to *Buckberg* v. *Washburn-Crosby Co.* (1906), 115 Mo. App. 701 [92 S.W. 733], where the defendant seller had quoted a price and then added the words

"immediate wire acceptance," thus indicating that he would fill the buyer's order if it were sent promptly.

In the instant case, respondent Flowers' letter contained no such reference to a "sales contract" nor to any "immediate acceptance" on the part of appellants. Certainly the phrase "Please let me know what you decide" cannot be deemed comparable. "Contract" and "acceptance" are both terms which have established meanings within the law of contracts. Certainly the use of these phrases would indicate that the seller contemplated entering into a binding legal obligation with the buyer. "Let me know what you decide," on the other hand, has no such established meaning and could equally well indicate that the seller wished to know whether the buyer intended to make a further offer or whether he wished to discontinue further negotiations altogether.

█ Interveners and respondents Sutton also allege in their brief that the trial court erred in failing to grant them damages in addition to specific performance. Since this issue is clearly one that should have been raised by means of a cross-appeal, and since no notice of appeal from this portion of the judgment was ever filed by the Suttons, this court is without power to consider this point. █ The rule is well established that appellate jurisdiction is dependent upon the timely filing of a notice of appeal. (*Estate of Hanley* (1943), 23 Cal.2d 120, 122 [142 P.2d 423, 149 A.L.R. 1250] ; *Abelleira* v. *District Court of Appeal* (1941), 17 Cal.2d 280, 289 [109 P.2d 942, 132 A.L.R. 715] ; *Smith* v. *Halstead* (1948), 88 Cal.App.2d 638, 640 [199 P.2d 379] ; *Vogel* v. *City of Millbrae* (1959), 167 Cal.App.2d 403, 405 [334 P.2d 620].)

Since there was never an offer, hence never a contract between respondent Flowers and appellants, the judgment must be affirmed, and it becomes unnecessary to determine whether appellants' purported acceptance complied with the statute of frauds or whether appellants failed to qualify for specific performance in any other regard.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 16, 1961. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.